UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
CALVIN OLIVER TAI-FATT,                                  :

                          Plaintiff,                     :          OPINION AND ORDER
                                                                    04 Civ. 9274 (GWG)
          -v.-                                           :

                                                         :

JO ANNE B. BARNHART, Commissioner of
Social Security,                                         :

                          Defendant.                     :
-------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

        Plaintiff Calvin Oliver Tai-fatt brings this action pursuant to 42 U.S.C. § 405(g) to obtain

judicial review of the final decision of the Commissioner of Social Security ("Commissioner")

denying his claim for disability insurance benefits.  The parties have consented to this matter

being determined by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  The

Commissioner has moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), and

Tai-fatt opposes this motion.  For the reasons stated below, the case is remanded to the Secretary

for further consideration.

I.  BACKGROUND

        A.  Tai-fatt's Claim for Benefits and Procedural History

        Tai-fatt filed an application for disability insurance benefits on March 4, 2003.  R. 67-69.[1]

 Tai-fatt claimed that he was "unable to work because of [his] disabling condition on December

1, 1987," and that he is "still disabled."  R. 67.  On May 5, 2003, the Commissioner denied Tai-

_____

        [1] "R." refers to the page numbers of the administrative record, which is annexed to the
Commissioner's Answer, filed March 29, 2005 (Docket #5).

fatt's application, R. 38-41, and Tai-fatt subsequently requested a hearing before an administrative law judge ("ALJ"), R. 42.

On October 15, 2003, Tai-fatt appeared pro se at a hearing before an ALJ. R. 18-35. In a decision issued October 29, 2003, the ALJ found that Tai-fatt was not disabled within the meaning of the Social Security Act during his covered period. R. 12-15. On November 19, 2004, the Commissioner's decision became final when the Appeals Council denied Tai-fatt's request for review of the ALJ's decision. R. 5-7.

Tai-fatt filed the instant action on November 23, 2004. See Complaint, filed Nov. 23, 2004 (Docket #1). On May 20, 2005, the Commissioner moved for judgment on the pleadings. See Defendant's Memorandum of Law in Support of Her Motion for Judgment on the Pleadings, filed May 20, 2005 (Docket #9). Tai-fatt served opposition papers on the Government. While he did not file these papers, the Government paginated and annexed them to its reply memorandum. See "Plaintiff Defense Response For Motion on Defendant Pleading [sic]," dated June 20, 2005 ("Pl. Mem.") (annexed as exhibit to Reply Memorandum of Law in Support of Defendant's Motion for Judgment on the Pleadings, filed July 19, 2005 (Docket #13) ("Def. Reply")).

B. Evidence Presented Before the ALJ

Because the only issue in this case is whether Tai-fatt was disabled between 1987 and 1991, and because much of the documentation in the record does not relate to this period, we provide a truncated summary of the hearing record.

1. <u>Tai-fatt's Testimony</u>

The following facts are taken from Tai-fatt's testimony before the ALJ:

Tai-fatt, who is now a United States citizen, was born in Kingston, Jamaica, on October 13, 1945. R. 30. He came to the United States in 1965 and served in the U.S. Army from 1968 to 1969. R. 30-31. After his service in the military, he began seeking treatment due to "pain and disability." R. 25. Tai-fatt worked as a display person at trade shows from 1969 to 1984, and briefly again in 1987. R. 20, 90. His job as a display person involved assembling displays and furniture for exhibitors. R. 80-81.

At the hearing, Tai-fatt testified to some of his medical problems. He went to different doctors after he got out of the military, and went to the Veterans Administration ("VA") in 1981 for medical treatment. R. 25. He saw some private doctors after 1981, but has no medical records of such treatment and testified that those doctors are all dead. <u>See</u> R. 26. At the VA visit in 1981, he was diagnosed with diabetes, and was told to watch his diet. R. 26-27. He did not follow the doctor's directions because he did not know much about diabetes. R. 27. In the late 1980's and early 1990's, he would feel "good" one moment and then a moment later he would feel "weakness," almost "no energy whatsoever," "blurry vision," and "dizziness" from the diabetes. R. 27. Also, Tai-fatt testified that he has hearing problems related to his job as a demolition sergeant in the military, but did not receive a hearing aid from the VA until 1994 or 1995. R. 28.

In the early 1980's, he began experiencing depression, and then in 1985, his body "was going bad," R. 25, 29; eventually, he had family problems, got a divorce, lost his family, and became homeless in the mid-1980's, R. 32. By 1987, he had completely stopped working and

was homeless through the end of 1991.  R. 20, 24-25, 32-33.  Eventually, he must have acquired

a residence because Tai-fatt testified that he was living with his fourth wife.  R. 30, 204.

Although Tai-fatt testified he had experienced depression and disability as far back as the early

1980's, he received no emergency room treatment during the covered period, and only recently

began receiving treatment for his depression.  R. 25, 29, 32.

Tai-fatt testified that he did not receive medical treatment during the covered period

because he was homeless, had no money, and knew nothing about Social Security disability.

R. 22, 32.  The only medical record dated before 1991 that Tai-fatt submitted to the ALJ was a

benefits determination by the VA in 1981.  R. 22.  That document reflected that the VA

determined in 1981 that Tai-fatt was less than 10 percent disabled and that the VA would not pay

him any benefits.  R. 22.  While Tai-fatt testified that the VA currently rates him 100 percent

disabled, R. 28, the record indicates that the VA currently lists him as only 90 percent disabled,

although it pays him at the 100 percent rate.  R. 239, 242.  His current disability is based on

"unemployability" due to medical impairments, including depression and various orthopedic

injuries.  R. 28-29.

### 2.  Records relating to Tai-fatt's Medical Condition

Beginning in 1994, Tai-fatt began receiving medical treatment from various VA medical

centers ("VAMCs").  R. 82-83.  Virtually all of the treatment in the record submitted to the SSA

occurred at various VAMCs.  Tai-fatt claims his first visit to a VAMC was in January 1994.

R. 82.

a. <u>Orthopedic Conditions</u>

The oldest record of treatment is a November 20, 1994, document referring to a left-foot x-ray at the Manhattan VAMC.  R. 131.  The x-ray revealed his left foot had a healed metatarsal[2] fracture, and a right knee chondromalacia[3] secondary to favoring his right leg.  R. 131.  He was given strengthening exercises, range of motion exercises, and nonsteroidal anti-inflammatory drugs ("NSAIDs").[4]  R. 131.  A follow up examination on June 14, 1995, revealed that Tai-fatt continued to have left foot pain and right knee pain secondary to favoring his right leg while walking.  R. 131.  On December 20, 1995, he received a prescription for orthopedic shoes with a metatarsal pad.  R. 135.

On May 13, 1996, a magnetic resonance imaging ("MRI") scan of Tai-fatt's right knee revealed an irregularity in the cartilage and degeneration in the medial meniscus.  R. 134.

During an examination in January 1997, Tai-fatt complained of a thirty-year history of left foot pain, and the treating physician's impression was an old fifth-metatarsal fracture with calcification and possible tendinitis.  R. 310-311.  Tai-fatt continued to complain of foot and knee pain at an examination on February 5, 1997.  R. 139.  Tai-fatt was prescribed medication and various therapies, including exercise.  R. 139, 313, 328.   A physical examination also revealed that Tai-fatt's gait was normal.  R. 313.  Tai-fatt said that he could walk "unlimited distances" and ascend/descend stairs without difficulty.  R. 313.

---

[2]The "metatarsal" bones are the five long bones in the foot connected to the toes, articulating from the toes towards the heal.  <u>See</u> <u>Stedman's Medical Dictionary</u> 224, Diagram A13 (27th ed. 2000) (hereinafter "<u>Stedman's</u>").

[3]"Chondromalacia" is a "softening of any cartilage."  <u>Stedman's</u> at 341.

[4]<u>See</u> <u>Stedman's</u> at 1231.

At a VA evaluation conducted by Dr. Kuchment on August 12, 1997, and approved by Dr. Ores on August 18, 1997, Tai-fatt indicated that he was able to walk up to three-quarters of a mile while using a right knee brace, and required no assistive devices. R. 263. On examination, he walked normally. R. 263. Dr. Kuchment's diagnosis was degenerative joint disease of the right knee and status-post old left foot injury. R. 263. In Dr. Kuchment's opinion, Tai-fatt's problem with his right knee was "related to his left foot injury which caused the patients [sic] to favor left lower extrmities [sic] putting excessive stress on his right lower extremities." R. 263. On September 17, 1997, Tai-fatt complained of intermittent right knee pain but reported an ability to engage in "unlimited ambulation." R. 140. Similarly, although he complained of foot pain at a December 1997 exam, he was able to walk without difficulty and had full motor strength. See R. 345 (rating his motor strength at 5 out of 5).

The record reflects various visits to the VA between 1998 and 2000 – most of which resulted in reports of Tai-fatt's complaints of left and right knee and/or ankle pain, and indicating certain limitations in his mobility. See, e.g., R. 144, 154, 356, 365, 383, 388-89.

In a report dated January 29, 2001, Dr. Behr wrote a detailed analysis of Tai-fatt's condition after reviewing his earlier medical records, including his military records. R. 179-182. Dr. Behr reported that the military records revealed a 2nd and 5th metatarsal fracture on the left foot, but did not reveal any injuries to his left knee or right ankle at the time of his original injury in 1968. R. 179. Still, Tai-fatt told Dr. Behr that the left knee and right ankle pain resulted from his service injury. R. 179. The report indicated that Tai-fatt "walks slowly, deliberately with no list or tilt but with a limp due to holding his knees stiff." R. 180. Dr. Behr's diagnosis included an old fracture of the left foot, "osteochondritis dessicans" of the right ankle and left femur, a

6

cyst of the right calcaneal bone,[5] and a small ganglion cyst at the talonavicular joint[6] towards the back of his body. R. 182. In a typewritten note that is crossed out, Dr. Behr said it was "as likely as not that these conditions are proximally due to the service connected right knee condition"; a handwritten notation, "changed in computer," is written next to the crossed-out text. R. 182. At a September 2002 clinic visit, Tai-fatt had no knee pain and no tenderness or instability. R. 406.

On January 12, 2003, an MRI of the lumbar spine showed mild degenerative arthritis with disc bulges, but no disc herniation. R. 158-59, 282-83. In a note dated February 13, 2003, Dr. Hedayatnia, the director of the Brooklyn VA pain management clinic, wrote that Tai-fatt had knee injuries and had experienced chronic lower back and right shoulder pain due to arthritis. R. 291. Dr. Hedayatnia opined that "[at] this time I recommend that [Tai-fatt] avoid lifting heavy objects and the jobs that need standing for long periods of time." R. 291.

b. Hearing

Tai-fatt visited the audiology clinic in November and December 1994, and received a prescription for hearing aids on January 6, 1995. R. 132, 133, 301-02. On May 30, 1995, he was successfully fitted with hearing aids. R. 306. After complaints from Tai-fatt and subsequent testing, R. 271, 274, he was successfully fitted with new hearing aids in May 1997 and again in May 2003. R. 318, 435.

c. Mental Health Treatment

Tai-fatt first received treatment for his mental health through therapeutic counseling at a primary care clinic in 2003. R. 162, 193-4, 196, 215, 217, 252, 459, 460. He visited a post-

---

[5]"Calcaneal bone" is the heel bone. Stedman's at 266.

[6]"Talonavicular" joint is a joint connecting the ankle, tibia, and fibula. See Stedman's at 1784.

traumatic stress disorder ("PTSD") clinic on January 8, 2003. R. 252. On October 10, 2003, he was found to be mildly depressed and to have "manageable" anxiety. R. 459.

### 3. VA Benefits Decisions

In a notice to Tai-fatt dated December 9, 1981, the VA denied Tai-fatt's claim for benefits and determined that he had a less than 10 percent service-connected disability due to a left foot fracture, status post right inguinal herniorrhaphy,[7] and hearing loss. R. 126, 245, 250. The notice further indicated, however, that Tai-fatt would be entitled to treatment for any service-connected disability. R. 126. His diabetes was not found to be incurred or aggravated by service, and his eye condition was not found to be a disease or injury. R. 126.

Tai-fatt filed another claim for benefits on July 7, 1995, and on December 10, 1996, the VA found that as of August 25, 1995, Tai-fatt was entitled to an "increased evaluation" for service-connected tinnitus, bilateral hearing loss, and a fracture of the left foot. R. 262. One year later, on December 9, 1997, the VA determined that he was entitled to increased benefits as of July 7, 1995 (the date of the original claim for an increase). R. 171. The decision concluded that he had a 10% disability rating based on his service-connected osteoarthritis in his right knee and another 10% disability rating for a "residual scar, right inguinal herniorraphy." R.171.

By letter dated December 29, 1997, the VA found Tai-fatt's combined service-connected disability was 50 percent, even though the percentages of his individual disabilities did not add up to this number. T. 129. The VA's notice reflected that Tai-fatt was entitled to monthly benefits from the VA dating back to November 1, 1994. R. 127.

A VA decision dated June 12, 2001, indicated that Tai-fatt's combined service-connected

---

[7]"Herniorrhaphy" means surgical repair of a hernia. Stedman's at 814.

disability was 70 percent, effective October 30, 2000.  R. 167-72.  A VA decision dated August 8, 2003, indicated that the VA increased its evaluation of Tai-fatt's depressive disorder from 30 percent to 50 percent disabling, and it was determined that he was entitled to the 100 percent rate because he was unable to work as of March 31, 2003.  R. 238-44.  The VA's decision was based on Dr. Fine's report that "his inability to work, related to his major depression and anxiety[,] is integrally connected and indeed caused by his long term orthopedic injuries and ear injuries which occurred in the military, and which have resulted in severe and chronic pain and inability to do his work, which is creating window displays."  R. 242.  The notice indicated that Tai-fatt would receive $2,318 in monthly payments as of April 1, 2003.  R. 238.

Three doctor's letters seem to have been written for consideration in determining Tai-fatt's VA benefits.  In an undated letter, Dr. Ulises Militano wrote that Tai-fatt "has [had] right knee and right ankle pain for some time.  It is probable that this ankle pain is secondary to his knee pain as his gait would be thrown off [from] the knee pain resulting in abnormal loading of the right ankle."  R. 164.  In another letter addressed "to whom it may concern" and dated October 26, 2000, Dr. Nickson wrote that Tai-fatt's service-related injury in 1968 affected his gait and caused the subsequent injury to his left knee, and added, "please assist him in any way with VA related benefits."  R. 165.  On January 16, 2003, Dr. Nickson wrote another note indicating that despite his "valiant efforts to return to the workforce, Mr. Taifatt has been unable to maintain employment.  Please assist him in any way possible to achieve appropriate benefits."  R. 166.

C.  The ALJ's Decision

On October 29, 2003, the ALJ issued his decision, which determined that Tai-fatt was not entitled to disability insurance benefits.  R. 9-15.  First, he concluded that Tai-fatt's disability insurance coverage ended on December 31, 1991, and thus that he had to establish disability before that date.  R. 12, 75.  Although the ALJ found that the evidence did not indicate Tai-fatt had engaged in substantial gainful activity since at least December 1, 1987, the alleged onset date, the ALJ noted that the earliest date of treatment in the record was 1994.  R. 13.  Although the ALJ recognized that Tai-fatt sought VA-pension-based disability as early as December 1981, the injuries forming the basis of that application were found to be less than 10 percent disabling.  R. 13.  Even when VA benefits were awarded to Tai-fatt in 1994, the ALJ stated that they represented no more than his 10 percent "overall disability."  R. 13.  Although the ALJ found the medical evidence established impairment severity, that evidence did not relate to any time prior to December 31, 1991.  R. 13.  The ALJ placed the most significance on the fact that Tai-fatt admitted during the hearing that he "was not treated or medicated for any impairment during the period from the December 1, 1987 alleged onset date through the December 31, 1991 date last insured."  R. 14.

The ALJ's findings were as follows:

1.  The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through December 31, 1991.

2.  The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.  While the medical evidence establishes impairment severity, this cannot be established for any time prior to December 31, 1991, the claimant's date

last insured.

4.      The claimant did not have any impairment or impairments that significantly limited his ability to perform basic work-related activities prior to his date last insured; therefore, the claimant did not have a severe impairment at any time prior to the December 31, 1991 expiration of his disability insured status (20 CFR § 404.1521).

5.      The claimant was not under a "disability" as defined in the Social Security Act, at any time through the December 31, 1991 expiration of his disability insured status (20 CFR § 404.1520(c)).

R. 14.

D.  <u>The Appeals Councils' Decision Not to Review</u>

On November 13, 2003, Tai-fatt requested that the Appeals Council review the ALJ's decision. R. 461-463. Attached to his request for review, Tai-fatt submitted two pieces of evidence that were not in the record before the ALJ. R. 463-465. First, in a letter dated February 4, 2002, and addressed "to whom it may concern," Dr. Ores wrote that Tai-fatt had a service-connected left foot injury and degenerative disease of the right knee. R. 465. He also indicated that Tai-fatt had impaired hearing, diabetes mellitus, and a hernia. R. 465. Dr. Ores claimed that "due to Mr. Tai-fatt's disabilities, he has not been able to work from 1987 to present, any work." R. 465.

Second, Dr. Navid wrote a letter dated August 4, 2004, addressed "to whom it may concern," indicating that she had treated Tai-fatt in the primary care clinic since August 2003. R. 464. She reported that Tai-fatt had a service-connected disability due to a left foot injury, degenerative disease of both knees confirmed by x-ray, depression, impaired hearing, and diabetes. R. 465. Dr. Navid stated that "because of these conditions he has been unable to do any type of work from 1987 to the present." R. 464.

On November 19, 2004, the Appeals Council issued a summary order denying review of the ALJ's decision. R. 5-8.

E. Additional Evidence Submitted in the Instant Action

In the course of briefing this case, Tai-fatt submitted a letter, dated June 1, 2005, from Dr. Jeffrey Fine, a physician who is currently treating him. Pl. Mem. at 48. The letter states that Tai-fatt suffers from a full range of PTSD symptoms, but does not mention the relevant period between 1987 and 1991. Id.

Tai-fatt also submitted evidence that Dr. Ores was the chief medical officer at the same VAMC in Manhattan where Tai-fatt's first medical examination was conducted in 1981. Pl. Mem. at 75-76. Dr. Ores was the doctor who, in a note dated February 4, 2002, wrote that "due to Mr. Tai-fatt's disabilities, he has not been able to work from 1987 to present, any work." R. 465.[8]

Tai-fatt also attached records from the 1960's noting treatment for a hernia and a foot fracture, see Pl. Mem. at 49-50, and records from 1981 involving requests for treatment and examinations relating to his foot, hernia, and hearing loss conditions, Pl. Mem. at 52-55.

II. APPLICABLE LEGAL PRINCIPLES

A. Scope of Judicial Review under 42 U.S.C. § 405(g)

A court reviewing a final decision by the Commissioner must first determine whether the Commissioner applied the correct legal standard. Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999). If the Commissioner failed to apply the correct legal standard in making a determination,

---

[8]Strangely, a letter of the same date with slightly different wording appears in the materials submitted with plaintiff's opposition papers. See Pl. Mem. at 98.

the reviewing court must not defer to the Commissioner's decision.  See Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984) ("Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the correct legal standard has been applied, the court must determine whether the decision was supported by substantial evidence.  Tejada, 167 F.3d at 773.  "Substantial evidence" is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

If the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even where substantial evidence supporting the claimant's position also exists.  See generally Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder.") (citation omitted); see also 42 U.S.C. § 405(g) ("The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . .");  Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) ("A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error.") (citations omitted).  The role of the reviewing court is therefore "quite limited and substantial deference is to be afforded the Commissioner's decision."  Burris v. Chater, 1996 WL 148345, at *3 (S.D.N.Y. Apr. 2, 1996).

B.  Standard Governing Evaluation of Disability Claims by the ALJ

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

To evaluate a Social Security claim, the Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam) (citations omitted).  Disability decisions of "another governmental agency" should be given "some weight[,] and should be considered" by the SSA in making its own disability determination. Cutler v. Weinberger, 516 F.2d 1282, 1285-86 (2d Cir. 1975); see also Rodriguez v. Schweiker, 640 F.2d 682, 686 (5th Cir. 1981) ("A VA rating is certainly not binding on the [Commissioner], but it is evidence that should be considered and is entitled to great weight.")

Regulations issued pursuant to the Social Security Act set forth a five-step process that the Commissioner must use in evaluating a disability claim. See 20 C.F.R. § 404.1520(a)(4); see also Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000) (describing the five-step process).  First, in

evaluating the claim, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," id. § 404.1520(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities," id. § 416.920(c).  Third, if the claimant's impairment is severe and is listed in 20 C.F.R. Part 404, Subpt. P, App. 1, or is equivalent to one of the listed impairments, the claimant must be found disabled.  Id. § 404.1520(a)(4)(iii).  Fourth, if the claimant's impairment is not listed or is not equal to one of the listed impairments, the Commissioner must review the claimant's residual functional capacity to determine if the claimant is able to do work he or she has done in the past, i.e., "past relevant work."  Id. § 404.1520(a)(4)(iv).  If the claimant is able to do such work, he or she is not disabled.  Id.  Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's residual functional capacity permits the claimant to do other work. Id. § 404.1520(a)(4)(v).  If the claimant cannot perform other work, he or she will be deemed disabled.  Id.  The claimant bears the burden of proof on all steps except the final one (that is, proving that there is other work the claimant can perform).  Curry, 209 F.3d at 122 (citations omitted).

In determining whether a claimant is disabled, a treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."  20 C.F.R. § 404.1527(d)(2).  The "[f]ailure to provide 'good reasons' for not crediting the opinion of a

claimant's treating physician is a ground for remand." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)). Where the ALJ does not accord controlling weight to a treating physician's opinion, the ALJ must explicitly consider: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." Shaw, 221 F.3d at 134 (quoting Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998)).

## III. DISCUSSION

Tai-fatt makes two arguments on appeal: (1) that he was denied a full and fair hearing, Pl. Mem. at 3, 19, and (2) that the ALJ incorrectly found that he was not disabled. Pl. Mem. at 4, 37, 44, 75. Each of these arguments is addressed below.

### A. Tai-fatt's Claim That the ALJ Denied Him a Full and Fair Hearing

First, Tai-fatt argues the ALJ denied him a full and fair hearing by failing to inform him that there were free legal services available. Pl. Mem. at 3, 19. The Social Security Act requires that the Commissioner "notify each claimant in writing, . . . of the options for obtaining attorneys . . . [and] shall also advise the claimant of the availability to qualifying claimants of legal services organizations which provide legal services free of charge." 42 U.S.C. § 406(c).

There is no question that Tai-fatt received written notice of the availability of free legal services. The SSA's initial notice dated May 5, 2003, R. 38, denying Tai-fatt's claim, informed Tai-fatt that he had the right to have a lawyer represent him and that "free legal services" were available if he qualified, R. 40. Furthermore, when Tai-fatt requested an administrative hearing, he signed a statement acknowledging that he understood he had the right to legal representation,

and that the agency would provide him with a list of legal referral or legal service organizations that could assist him.  R. 42.  Before the hearing, the SSA sent Tai-fatt another notice advising him of his right to be represented by an attorney and that some organizations "may be able to represent [him] free of charge."  R. 43.

Tai-fatt's complaint seems to be that while the ALJ orally informed him of his right to an attorney, R. 18, the ALJ did not orally inform him of the availability of free legal services.  Pl. Mem. at 19.  This argument must be rejected.  "[T]he Commissioner and ALJ are only bound to follow the notice requirements set out by statute or regulation."  Snyder v. Barnhart, 323 F. Supp. 2d 542, 545 (S.D.N.Y. 2004) (citing Gonzalez v. Barnhart, 2003 WL 22383376, at *5 (S.D.N.Y. Oct.16, 2003)).  Thus, the ALJ is not required to supplement the written notification under 42 U.S.C. § 406(c) with oral notification at the hearing.

Second, Tai-fatt contends that his hearing before the ALJ was too short.  Pl. Mem. at 20 ("Ended the hearing in 15 minutes. From 11:45 am. to 12 pm. Was ALJ in a hurry for lunch?") (citation and format omitted).  This argument too must be rejected as there is no requirement for a hearing of a particular length.  Of course, when a claimant appears pro se, "the ALJ is under a heightened duty to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."  Echevarria v. Secretary of Health and Human Services, 685 F.2d 751, 755 (2d Cir. 1982) (internal quotation marks omitted) (quoting Hankerson v. Harris, 636 F.2d 893, 895 (2d Cir. 1980).  But this duty cannot be measured based on the length of time committed to the hearing.  Given that Tai-fatt admitted he never received medical treatment, including emergency care or charitable medical services, from the time of his alleged onset of disability in 1987

through December 1991 when his insured status ended, R. 24, 32, there was a limited area available for investigation.

    B.  <u>Sufficiency of the Evidence</u>

        1.  <u>Substantial Evidence Supporting the ALJ's Decision</u>

As noted, Tai-fatt's effort to obtain disability benefits suffered from the defect of a lack of any "medical evidence" presented to the ALJ to support his claim that he was disabled during the covered period. <u>See</u> 20 C.F.R. § 404.1508 (requiring that a physical or mental impairment be established by medical evidence). Additionally, the ALJ's decision was supported to some extent by the VA's determination concluding that he was only 10 percent disabled in 1981. R.126. Tai-fatt argues that although the 1981 VA decision determined he was 10 percent disabled, his disabilities "in time have progressed into [his] health condition deteriorating, where in 1985 [he] stopped working self-employed . . . because of [his] physical and mental condition from pain and suffering. From [his] military past injuries – and diabetes – led [him] to be homeless." Pl. Mem. at 6.

Tai-fatt points to a report by Dr. Fine dated August 8, 2003 and concluding that Tai-fatt's "inability to work, related to his major depression and anxiety[,] is integrally connected and indeed caused by his long term orthopedic injuries and ear injuries which occurred in the military, and which have resulted in severe and chronic pain and inability to do his work." R. 242; Pl. Mem. at 21-22, 44. Such a statement hardly constitutes medical evidence of disability, however, because Dr. Fine merely determined that Tai-fatt was disabled as of 2003, even though the disability was related to his long-term injuries. Dr. Fine made no determination that Tai-fatt was disabled during the relevant covered period. In the end, no medical evidence was placed

before the ALJ regarding Tai-fatt's medical condition between 1987 and 1991, thus precluding a finding of disability during that period.

Tai-fatt argues that he is entitled to relief because the SSA "gave no legal published notice that there was disability benefits available to homeless veterans with service connected disabilities of the Vietnam era war during the 1970 or 1980 era which I was one of them." Pl. Mem. at 35. He also notes that he was homeless during this period and could not afford to seek medical treatment. Pl. Mem. at 9; R. 24. However, the Court is unaware of any legally enforceable obligation on the part of the SSA to give the notice that Tai-fatt asserts should have been given him. Furthermore, these arguments do not alter the fact that the record before the ALJ was devoid of medical evidence to support his claim.

### 2. New Evidence Presented After the ALJ Opinion

On appeal before the Appeals Council, Tai-fatt presented new medical evidence not considered by the ALJ. See R. 8, 461-465. He also presented additional medical evidence to this Court as part of the briefing of the instant motion. See Pl. Mem. at 48, 52-55, 68-69, 99-100. We first discuss the law governing the treatment of such new evidence and then its applicability to this case.

### a. Governing Law

Whether new evidence of disability can be considered depends upon which forum it was presented to. With respect to new matters presented to a district court, the Social Security Act provides that the court may remand a matter and "order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."

Lisa v. Secretary of Health and Human Services, 940 F.2d 40, 43 (2d Cir. 1991) (internal

quotation marks omitted) (emphasis in original) (quoting 42 U.S.C. § 405(g)); Tirado v. Bowen,

842 F.2d 595, 597 (2d Cir. 1988). There are three requirements that must be satisfied in order for

a court to order the Commissioner to consider additional evidence:

> An appellant must show that the proffered evidence is (1) new and not merely
> cumulative of what is already in the record, and . . . (2) material, that is, both
> relevant to the claimant's condition during the time period for which benefits were
> denied and probative. The concept of materiality requires, in addition, a
> reasonable possibility that the new evidence would have influenced the
> [Commissioner] to decide claimant's application differently. Finally, claimant
> must show (3) good cause for [his] failure to present the evidence earlier.

Tirado, 842 F.2d at 597 (internal quotation marks and citations omitted); see also Lisa, 940 F.2d

at 43 (listing the same three requirements). "New" evidence is evidence that has not been

considered previously during the administrative process. See, e.g., Szubak v. Secretary of Health

and Human Services, 745 F.2d 831, 833 (3d Cir. 1984).

With respect to new material presented to the Appeals Council, however, the requirement

of "good cause" does not apply. See Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996); accord

Williams v. Barnhart, 2002 WL 618605, at *7 (S.D.N.Y. Apr. 18, 2002); Milano v. Apfel, 98 F.

Supp. 2d 209, 214-215 (D. Conn. 2000); Sobolewski v. Apfel, 985 F. Supp. 300, 311 (E.D.N.Y.

1997). The "good cause" requirement does not apply because the new material is already a part

of the administrative record, and thus the Appeals Council is required by regulation to consider

it. See 20 C.F.R. § 404.970(b) (requiring Appeals Council to consider evidence presented on

appeal that is "new and material"); Sobolewski, 985 F. Supp. at 311; see also Perez, 77 F.3d at

45 ("new evidence submitted to the Appeals Council following the ALJ's decision becomes part

of the administrative record for judicial review when the Appeals Council denies review of the

ALJ's decision"). Consequently, where, as here, the Appeals Council denies review after considering new evidence, this Court "simply review[s] the entire administrative record, including the new evidence, and determine[s], as in every case, whether there is substantial evidence to support the decision of the [Commissioner]." Perez, 77 F.3d at 46.

b. Whether the New Evidence Can Be Reviewed

i. Evidence Presented to this Court. Some of the evidence presented to this Court is not "material" to the period at issue. For example, the letter from Dr. Fine, dated June 1, 2005, asserts that Tai-fatt is currently disabled, but it does not refer to the relevant covered period in the late 1980's through the early 1990's. See Pl. Mem. at 48. Furthermore, the new medical evidence from the 1960's that records treatment for a hernia and a foot fracture, see id. at 68-69, 99-100, has no direct bearing on whether Tai-fatt was disabled from 1987 through 1991. Similarly, the medical evidence forming the basis of the 1981 VA benefits determination is irrelevant as to whether Tai-fatt was disabled during the covered period. See id. at 52-55. While the records from the 1960's and 1981 establish a history of medical problems, they are not material to the ALJ's decision in light of the VA determination in 1981 and the fact that there is no evidence of medical treatment during the relevant period. More significantly, Tai-fatt has not shown "good cause" for failing to present this material to the ALJ.

ii. Material Presented to the Appeals Council. The new evidence presented to the Appeals Council on November 19, 2004, R. 8, consisted of two letters from Dr. Navid and Dr. Ores, both of which state in somewhat conclusory fashion that Tai-fatt had been disabled and unable to work since 1987 because of his previous impairments. R. 464-465. Putting aside the weight they should be accorded, they appear to be "new" inasmuch as they were not previously

presented to the ALJ and "material" in that they relate to Tai-fatt's period of disability. Moreover, because the order of the Appeals Council denying review in Tai-fatt's case expressly stated that it had "considered" these letters, R. 5-6, 8, the Appeals Council appears to have made an "implicit finding that the evidence was, in fact, new and material." Sobolewski, 985 F. Supp. at 311. As previously noted, there is no requirement that Tai-fatt show "good cause" for having failed to present this material earlier. Perez, 77 F.3d at 45.

Accordingly, the task of this Court is now to "review the entire administrative record, including the new evidence, and determine . . . whether there is substantial evidence to support the decision of the [Commissioner]." Perez, 77 F.3d at 46. This case is somewhat unusual, however, in that the Commissioner's determination is chiefly supported not by any affirmative evidence showing the lack of disability, but rather on the absence of any medical record relating to the period at issue. See R. 13-14.

Now that the new medical records must be considered in a review of the record, the Court finds it difficult to determine whether the Commissioner's decision is supported by substantial evidence, because the premise underlying the decision – that there were no medical records for the relevant period – has now been undermined. The Court's task is made even more complicated by the fact that the Appeals Council chose not to explain the weight it gave these records, at least one of which appears to be from a treating physician. See 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). Had these records been presented to the ALJ, they would have triggered a duty on his part to seek additional records and information from these physicians. See, e.g., Geracitano v. Callahan, 979 F. Supp. 952, 956 (W.D.N.Y.

1997) ("A corollary . . . to the treating physician rule [is] that the decision maker [has] a duty to seek clarification from a treating physician in the event the physician's report [is] somehow incomplete.") (citing <u>Schisler v. Bowen</u>, 851 F.2d 43, 46-47 (2d Cir. 1988)).

In sum, this Court finds itself unable to conduct a proper review of the Commissioner's decision.  Accordingly, this case must be remanded for consideration of these letters, with a direction that the ALJ make an appropriate inquiry of these physicians to determine the basis for their disability determinations.  It is possible that the retrospective opinions of these physicians might shed light on Tai-fatt's condition between 1987 and 1991 such that the agency might conclude Tai-fatt was entitled to benefits for this period.  <u>Cf.</u> <u>Rivera v. Sullivan</u>, 923 F.2d 964, 968 (2d Cir. 1991) (discussing weight to be given the retrospective opinion of a physician).  The Court expresses no opinion on this question, of course, leaving that determination to the Secretary.

On remand, the ALJ should also obtain testimony from Tai-fatt regarding which impairments he subjectively considered disabling during the covered period, as this was not an area completely explored in the current record.  Obviously, the ALJ is free to seek testimony, documents, or examinations with respect to any other area deemed relevant to Tai-fatt's claim for benefits.

<u>Conclusion</u>

The case is remanded to the Secretary for further development of the record in accordance with this Opinion and Order.  The Clerk is requested to enter judgment and to close this case.

SO ORDERED.

Dated: November 30, 2005
        New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies mailed to:

Calvin O. Tai-fatt
47 Brookdale Place
Rye, New York 10580-2701

John E. Gura, Jr.
Assistant United States Attorney
86 Chambers Street
New York, NY  10007

Dated: November 30, 2005
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies mailed to:

Calvin O. Tai-fatt
47 Brookdale Place
Rye, New York 10580-2701

John E. Gura, Jr.
Assistant United States Attorney
86 Chambers Street
New York, NY 10007